**Ronald TRAFTON, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 82–0291–B.**

United States District Court, D. Maine.

Dec. 19, 1983.

:

---

Gordon E. Stein, Smith, Stein & Bernotavicz, Hallowell, Maine, for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Maine, for defendant.

## ORDER REMANDING ACTION TO SECRETARY

CYR, District Judge.

This action is brought under section 205(g) of the Social Security Act [Act], 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services [Secretary] affirming a termination of disability insurance benefits. Plaintiff became entitled to disability benefits commencing on January 8, 1972. Subsequently, plaintiff's benefits were terminated as a result of an administrative determination that plaintiff had regained the ability to engage in substantial gainful activity as of November 1981. A de novo

hearing was held on May 20, 1982 before a Social Security Administration administrative law judge [ALJ], and on June 18, 1982 the ALJ found that plaintiff was still disabled. On its own motion, the Appeals Council [Council] reversed the decision of the ALJ on October 15, 1982, finding plaintiff's impairments not severe. The decision of the Council thus became the "final decision" of the Secretary.

Plaintiff has exhausted his administrative remedies and moves for summary judgment. The defendant has filed a motion for an order affirming her "final decision" and a certified copy of the transcript of the entire record of the proceedings relating to plaintiff's application, including the testimony and documentary evidence upon which the decisions of the ALJ and the Council were based.

The ALJ found that plaintiff retained the residual functional capacity to perform a wide range of light work on a sustained basis, provided plaintiff is able to alternate between sitting, standing and walking. Since plaintiff's past relevant work required the functional capacity to perform work of more than a light exertional level, the ALJ determined that plaintiff's back impairment continues to prevent plaintiff from meeting the demands of his past relevant work.[1] The ALJ also determined that, considering his age and long absence from the competitive work force, plaintiff's skills would not be transferable to other semi-skilled occupations. Applying the Medical-Vocational Guidelines [Grid], 20 C.F.R., Part 404, Subpart P, App. 2, the ALJ found that Rule 202.02 required a finding of disabled.

The Council concluded that plaintiff suffers from a vertebrogenic disorder, but that it is not of such severity as to significantly limit plaintiff's ability to perform basic work activities. The Council also found plaintiff's subjective complaints of pain not entirely credible, in that the medical record does not demonstrate the existence of an impairment which would cause incapacitating pain.

The Court has reviewed and considered the entire record, including the transcript of the administrative proceedings and briefs submitted by the parties. In reviewing the Secretary's decision, the Court must determine whether the findings of the Council are supported by substantial evidence. 42 U.S.C. § 405(g); *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). Substantial evidence exists where a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support the conclusion drawn. *Id.* In addition, the conclusion drawn at the administrative level must be supported by full and detailed findings. *Small v. Califano*, 565 F.2d 797, 801 (1st Cir.1977).

Substantial evidence in support of a termination of benefits "... will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed." *Miranda v. Secretary of Health, Education & Welfare*, 514 F.2d 996, 998 (1st Cir.1975). The Council's finding that plaintiff does not have a severe impairment, implies an improvement in his condition or at least that any previous impairment was not "severe." This finding must be supported by substantial evidence.[2] *See Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 129 n. 3 (1st Cir.1981).

---

**1.** Plaintiff was last employed as a forklift operator in 1972 and before that had worked as a "hot top paver" for a construction company, and as a truck driver (T. 25–27).

**2.** The ALJ's findings and conclusions constitute recommendations to the Secretary. The Council is empowered to weigh the evidence independently and arrive at its own findings and conclusions, *Oldham v. Secretary of Health and Human Services*, 718 F.2d 507 at 510 (1st Cir. 1983). In so doing, the Council may reject the credibility findings of the ALJ or disregard testimony central to his determination, provided the Council expressly identifies the considerations which led to its conclusion. *See Beavers v. Secretary of Health, Education & Welfare*, 577 F.2d 383, 387 (6th Cir.1978).

■ The Secretary's regulations require a sequential evaluation of disability claims. *See* 20 C.F.R. § 404.1520. *See also Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). The second sequential test requires that a claimant have a severe impairment, that is, an impairment which "significantly limits [his] physical or mental ability to do basic work activities."[3] 20 C.F.R. § 404.-1520(c). In the present context "[t]he term significant means [*inter alia*] 'having a meaning,' 'deserving to be considered,' and 'having or likely to have an influence or effect,' as opposed to 'meaningless.'" *Shaw v. Heckler*, No. 83–0045–B, at 7 (D.Me. October 7, 1983) [unpublished Order], *quoting Webster's Third New International Dictionary* (Merriam Co.1976) (unabridged). *See also Jones v. Schweiker*, 551 F.Supp. 205, 208 (D.Md.1982).

■ The "not severe" regulation was promulgated in 1978 to clarify, without substantive change, the earlier rule that "slight" impairments were never disabling.

The definition, 'A medically determinable impairment is not severe if it does not significantly limit an individual's physical or mental capacity to perform basic work-related functions' is a clarification of the previous regulations (sic) terms 'a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnor-

malities.' Both have a negative sense and are related to the requirement of the law that, for impairments to be disabling, they must be 'of such severity' as to prevent the claimant from doing previous work and, considering age, education and work experience, prevent the individual from engaging in any kind of substantial gainful work which exists in the national economy. The discussion on pages 9296 and 9297 of the NPRM shows that there is no intention to alter the levels of severity for a finding of disabled or not disabled on the basis of medical considerations alone, or on the basis of medical and vocational considerations. Negative phrasing of this concept is more useful in evaluating disability than affirmative terms would be.

43 Fed.Reg. 55349, 55357–58 (November 28, 1978) [announcing "final rules"].[4]

■ In the "disability" context, a reduced ability to do work activities "has a meaning," ('influence,' or 'effect'), if (in view of vocational factors) it may render the individual unable to work. Thus, an impairment is not severe if it has "such a minimal effect on the individual['s ability to do basic work activities] that [it] would not be expected to interfere with his ability to do [most] work, irrespective of his age, education, and work experience." 42 Fed. Reg. at 9296.

---

3. "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including:
   (1) the physical ability to walk, stand, sit, lift, push, pull, reach, carry or handle;
   (2) the ability to see, hear and speak;
   (3) the mental ability to understand, remember and follow simple instructions;
   (4) the ability to make judgments;
   (5) the ability to respond appropriately to supervisors, co-workers and usual work situations; and
   (6) the ability to deal with changes in a routine work setting.
   20 C.F.R. § 404.1521(b).

4. Similarly, the Notice of Proposed Rule Making referred to the severity test as a "technical clarification," 43 Fed.Reg. 9284, 9287 (March 7, 1978), and made clear that no substantive change was intended:
   Several commenters suggested that the proposed amendments were drafted in response

to 'short falls' in the trust fund reserves and represent an effort by the Social Security Administration to conserve the trust fund. There has been a great deal of concern and attendant publicity about the depletion of the social security trust funds and efforts to deal with that problem. These proposed regulations, however, are in no way related to those efforts and concerns. As explained in greater detail elsewhere in this preamble, the proposed regulations are intended as a consolidation and elaboration of long-standing medical-vocational evaluation policies. Since the purpose of the proposed regulations is not to increase nor decrease the allowance/denial ratio, it is anticipated that their publication would virtually have no effect on the trust funds.
   *Id.* at 9295.

The importance of a proper administrative application of the severity test cannot be overstated in light of the increasing number of Social Security disability cases in which a finding of "not severe" forms the basis of the Secretary's decision denying or terminating disability benefits. A severity determination must take into account the criteria set out in 20 C.F.R. § 404.1521. The findings and conclusions must be stated with sufficient particularity to enable meaningful judicial review. *See Small v. Califano,* 565 F.2d at 801. Mere recitation of the medical evidence, followed by the conclusory statement that a claimant's impairment does not significantly limit his ability to do basic work activities, will not satisfy the Secretary's obligation. *Id.* It is not enough for the Secretary to reject medical evidence or expert opinion without assigning reasons for doing so or without discussing countervailing evidence.

The Council summarily rejected Dr. Krop's opinion as to plaintiff's ability to perform basic work activities, on the grounds that it was not supported by the medical evidence,[5] but the Council points to no evidence supporting its own conclusion. While other medical evidence in the record arguably supports the view that plaintiff's condition may have improved since 1972, the record contains little, if any, evidence of plaintiff's ability to perform basic work activities.[6] The medical evidence includes several diagnoses of plaintiff's back condition, but the Court finds it impossible to discern whether (or how) the Council determined plaintiff's ability to work under the criteria prescribed by 20 C.F.R. § 404.1521.

The case must be remanded. On remand the Secretary must make specific findings as to plaintiff's ability to perform basic work activities, applying the severity criteria set out in 20 C.F.R. § 404.1521 and the definition of severity set out above. Should the Secretary determine that additional evidence is required in order to make the necessary findings, plaintiff is to be afforded an opportunity to be heard.

It is therefore *ORDERED* that the decision of the Secretary is *VACATED* and the cause *REMANDED* to the Secretary for further proceedings in accordance herewith.

---

5. Dr. Krop notes that although he did not feel plaintiff was "fully disabled," he advised plaintiff that given his condition, "which involves degenerative changes in his spine," plaintiff should avoid repeated squatting or bending forward, and lifting more than 20 pounds (T. 108). The Council rejects Dr. Krop's opinion as not supported by the medical evidence but based primarily upon plaintiff's statement of his symptoms (T. 6).

6. There were a number of reflex tests performed on plaintiff which indicate that his motor capabilities are normal (T. 98). Although this evidence may be interpreted as indicating that plaintiff's "ability" to walk may not be impaired, it is for the Secretary to interpret the evidence and for the Court to review any such interpretation. *See Rodriguez v. Secretary of Health and Human Services,* 647 F.2d at 222.