**Raymond J. SHERMAN, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

Civ. No. 84–0123–B.

United States District Court, D. Maine.

Oct. 30, 1986.

William E. MacDonald, Bangor, Me., for plaintiff.

Timothy C. Woodcock, Asst. U.S. Atty., Bangor, Me., for defendant.

## MEMORANDUM AND ORDER ON AWARD OF ATTORNEY FEES

CYR, Chief Judge.

On March 26, 1984, plaintiff filed a complaint for judicial review of a decision by the Secretary of Health and Human Services [Secretary] discontinuing disability insurance benefits under the Social Security Act. On November 1, 1984, the Secretary moved to remand the case for reconsideration, pursuant to the Social Security Disability Benefits Reform Act of 1984 [Act], Pub.L. 98–460, which provided new standards for determining whether disability benefits should be terminated.[1] By order dated November 2, 1984, this court granted the Secretary's motion to remand. On review, the Secretary found that, under the new medical improvement standard enacted by Congress, plaintiff's disability did con-

tinue. As a consequence, plaintiff was awarded benefits. On May 9, 1986, the parties to the action before this court stipulated to its dismissal. Then, on May 21, 1986, plaintiff moved for an award of attorney fees pursuant to the Equal Access to Justice Act [EAJA], 28 U.S.C. § 2412.

The EAJA provides that the court shall award attorney fees to "a prevailing party" in any civil action (other than a tort action) brought by or against the Federal Government, unless the government's position was "substantially justified," or unless "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The purpose of the EAJA is to reduce the risk that the high cost of litigating against the government would deter challenges to unreasonable governmental action. *See, e.g., Aldrich v. Heckler,* 609 F.Supp. 863, 865 (D.Me.1985).

Plaintiff asserts that he is entitled to attorney fees on the basis that the position of the government was not substantially justified. The Secretary contends that plaintiff was not a "prevailing party" within the meaning of the statute. Therefore, the court addresses two issues: first, was plaintiff a "prevailing party"; and, second, if he was, was the position of the government "substantially justified"?

### I.

In *Coalition for Basic Human Needs v. King,* 691 F.2d 597 (1st Cir.1982), a case involving attorney fees under 42 U.S.C. § 1988,[2] the First Circuit prescribed two tests for determining whether plaintiffs are "prevailing parties." Under the first test, plaintiffs "are to be considered 'prevailing parties' if 'they succeed on any significant issue in litigation which achieves some of

---

**1.** Section 2 of the Act provides that "medical improvement" will be considered in determining whether to terminate benefits. In addition, the Act provides that courts "shall remand" to the Secretary all actions pending on September 19, 1984 "relating to medical improvement." Section 2(d)(2)(C).

**2.** Although the EAJA does not define the term "prevailing party," it is clear from the legislative history of the EAJA that the interpretation of

that term is to be consistent with the law developed under other fee-shifting statutes. *See* H.R. Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4990 [House Report]. *See also Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939, n. 7, 76 L.Ed.2d 40 (1983); *McGill v. Secretary of Health and Human Services,* 712 F.2d 28, 30 (2d Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

the benefit the parties sought in bringing suit.'" *Id.* at 599, *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). The second test, sometimes called the "catalyst" test, applies when relief or benefit is obtained outside the courtroom. Under these circumstances, the plaintiff is a prevailing party if the suit "was a 'necessary and important factor'" in bringing about the benefit, and if, "as a matter of law, the suit was not 'frivolous.'" *Id., quoting Nadeau,* 581 F.2d at 281. *See also Foster v. Boorstin,* 561 F.2d 340 (D.C.Cir.1977).

In the present case, plaintiff cannot be considered a prevailing party under the first test. Plaintiff did not succeed on the merits of any significant issue in the litigation. The mere obtaining of the order of remand, at the request of the Secretary, is clearly insufficient to constitute plaintiff a "prevailing party." *See Cook v. Heckler,* 751 F.2d 240 (8th Cir.1984); *McGill v. Secretary of Health and Human Services,* 712 F.2d 28 (2d Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

"[T]he phrase 'prevailing party' should not be limited to a victor only after entry of a final judgment following a full trial on the merits." House Report at 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 4990. In the typical case, an award of benefits following remand will be sufficient to establish the plaintiff as the prevailing party. *See Cook v. Heckler,* 751 F.2d at 241; *McGill v. Secretary of Health and Human Services,* 712 F.2d at 31–32; *Childress v. Heckler,* 616 F.Supp. 563 (D.La. 1985); *Hutchinson v. Heckler,* 612 F.Supp. 264 (D.Wis.1985).

■ In the present case, however, plaintiff was not granted benefits as the result of review on remand of the issues raised in the litigation. Rather, the benefits resulted from a review based on changes in the law. Thus, even though benefits in the present case were obtained on remand, it cannot be said that plaintiff succeeded on the merits of any issue in the litigation. As a consequence, it is necessary to look at the second test prescribed in *Coalition for Basic Human Needs v. King.*

Essentially, the catalyst test is designed to determine whether there is a causal connection between the litigation and the benefit received by the plaintiff. In *King,* plaintiffs had argued that the litigation caused the legislature to take the actions which mooted their suit. 691 F.2d at 598–99. The *King* court, however, did not decide the question and stated that "we need not resolve now how strong a causal showing is required." *Id.* at 599. In any event, plaintiff does not claim that his suit (or others similar to it) caused Congress to pass the Social Security Disability Benefits Reform Act of 1984.

Thus, it could be argued that the Act was an independent, supervening cause. Plaintiff points out, however, that the Act *required* that his request for judicial review be pending before the court on September 19, 1984, in order for him to receive a favorable settlement of his claim as a result of the application of the Social Security Disability Benefits Reform Act. Therefore, plaintiff asserts, his litigation was a "necessary factor" or prerequisite to receiving the benefits he sought. In other words, the filing of the suit was a *sine qua non;* but for the suit, he would never have been awarded benefits.

The plaintiff's argument proves too much. Under the catalyst test proposed by plaintiff, every claimant would be entitled to an EAJA attorney fee award so long as he was determined eligible for disability benefits while his suit remained pending, *whether or not his right to benefits had anything to do with the litigating position taken in his suit.* Quite obviously, the policy of EAJA would be ill served by promoting litigation without regard to whether the challenged governmental action was reasonable or unreasonable.

The question, essentially, is whether the connection between plaintiff's suit and his recovery of benefits is sufficiently strong to establish the plaintiff as the "prevailing party."

■ In the circumstances of the present case the court is satisfied that the causal connection is a close one. Plaintiff brought the present action in order to challenge the Secretary's denial of benefits on the basis of an alleged misapplication of the "severity" test. Plaintiff's position in that regard was a correct one. Defendant did misapply the severity test.[3] The fortuitous enactment of the Social Security Disability Benefits Reform Act merely afforded the Secretary an alternative basis upon which to determine that plaintiff was entitled to disability benefits. The fact of the matter is that plaintiff would have prevailed on his allegation that the Secretary misapplied the severity test. Therefore, the causal connection between plaintiff's suit and the Secretary's reversal of position, while cosmetically obscured, was very real indeed. Accordingly, plaintiff is a "prevailing party" within the meaning of the EAJA.

## II.

As the prevailing party, plaintiff is entitled to attorney fees, unless the Secretary's "position" was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The statute defines "position" to mean both the position taken in the civil litigation and the action taken by the Secretary upon which the civil litigation was based. 28 U.S.C. § 2412(d)(2)(D). The statute does not define "substantial justification"; however, in *Blaisdell v. Secretary of Health and Human Services*, 623 F.Supp. 973, 976 (D.Me. 1985), the court stated that the issue was "whether it was reasonable for the Secretary to arrive at her original decision or to defend that record on appeal."

■ The burden of proving substantial justification rests on the Secretary. *See Blaisdell*, 623 F.Supp. at 975. But, of course, placement of the burden of proof upon the Secretary does not mean that an award of fees follows automatically. Where the government can demonstrate that its case had "a reasonable basis both in law and fact," no award will be made.

*Id. See also Tressler v. Heckler*, 748 F.2d 146 (3d Cir.1984).

Plaintiff originally was granted disability benefits in 1970, based on a finding of cardiac impairment. As a result of its Continuing Disability Investigation program, the government terminated plaintiff's benefits on June 20, 1983. This termination was based on a finding that plaintiff's only medically determinable impairment was an anxiety neurosis and that his condition was not as serious as was at first supposed.

On August 5, 1983, plaintiff requested a hearing before an Administrative Law Judge [ALJ]. Following the hearing, the ALJ issued a decision on December 27, 1983, affirming the cessation of disability and termination of benefits. In his decision, the ALJ stated that plaintiff's anxiety neurosis did not significantly limit his ability to perform basic work-related activities and thus that plaintiff "did not have a severe impairment." (ALJ's Decision, at 5.)

The Appeals Council approved the ALJ's decision on March 4, 1984, making it the final decision of the Secretary.

When plaintiff sought judicial review on March 26, 1984, the government moved that the decision of the Secretary be affirmed. Consequently, the Secretary's position, both in the civil action and in the underlying agency action, was that plaintiff's impairment was non-severe at the time his benefits were terminated.

The question, then, is whether the Secretary's position that the plaintiff's impairment was non-severe was reasonable. On the record, the answer must be that it was not.

The Secretary's regulations require a sequential evaluation of disability claims. *See* 20 C.F.R. § 404.1520. *See also Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). The second step in this sequence requires that a claimant have a severe impairment. It is well established in this circuit, at least, that "an impairment is not

---

3. See discussion on severity test in Section II.

severe if it has 'such a minimal effect on the individual['s ability to do basic work activities] that [it] would not be expected to interfere with his ability to do [most] work, irrespective of his age, education, and work experience.'" *Trafton v. Heckler,* 575 F.Supp. 742, 745 (D.Me.1983), *quoting* 42 Fed.Reg. at 9296. Thus, the "severity" test is a *de minimis* screening device, "designed to do no more than screen out groundless claims." *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1124 (1st Cir.1986).

Plaintiff's claim was not so insubstantial as to be considered "groundless," nor can it be said that his impairment had no more than a "minimal effect" on his ability to do most work. Plaintiff's treating physician, Dr. Ordway, testified that plaintiff's ability to do basic work-related activities was significantly limited. This diagnosis was made on the basis of objective testing as well as personal evaluation. In addition, Dr. Kellogg, a medical advisor, agreed with Dr. Ordway's diagnosis and considered the plaintiff's condition to be severe. This medical testimony was uncontroverted.

Nevertheless, the ALJ stated in his findings that "[t]he medical evidence establishes that ... the claimant ... [does] not have a severe impairment." (ALJ's Decision, at 5.) In making this finding, it is clear that the ALJ (and the Secretary) not only disregarded the medical evidence, but also failed to follow the regulations governing review of disability claims.

As this court stated in *Trafton:*

The importance of a proper administrative application of the severity test cannot be overstated.... Mere recitation of the medical evidence, followed by the conclusory statement that a claimant's impairment does not significantly limit his ability to do basic work activities, will not satisfy the Secretary's obligation.

575 F.Supp. at 746.

Because plaintiff's claim was supported by uncontroverted medical testimony, which was ignored by the Secretary, and because the severity test is designed only to screen out groundless claims, the Secretary did not act reasonably, either in arriving at the original decision or in defending that decision on appeal. Had the court reached the merits of the suit, which did not occur only because of the intervening enactment of the Social Security Disability Benefits Reform Act, it necessarily would have found that the Secretary's position was not supported by substantial evidence.

Accordingly, plaintiff is entitled to an award of attorney fees under the provisions of the EAJA. 28 U.S.C. § 2412(d)(1)(A).

SO ORDERED.